UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VOX MEDIA, INC.,**<br><br>*Plaintiff,*<br><br>v.<br><br>**GRAIG MANSFIELD,**<br><br>*Defendant.* | )<br>)<br>)<br>)<br>)  Civil Action No.: _____<br>)<br>)<br>)<br>)<br>)<br>) |

# COMPLAINT

Plaintiff Vox Media, Inc. ("Vox Media"), a Delaware corporation, submits this complaint against Defendant Graig Mansfield and alleges as follows:

## NATURE OF THE ACTION

1. Graig Mansfield was a Procurement Manager for Vox Media from August 2012 to June 2015. In this position, he was entrusted with the management of corporate assets, including rewards-program accounts for corporate credit cards and frequent-flier programs. Although he agreed to serve the company faithfully and use his best efforts to promote its interests, Mansfield abused the trust Vox Media placed in him, defrauding his employer by taking over $200,000 worth of assets for his own use. Vox Media brings this civil action for fraud, fraudulent concealment, conversion, and unjust enrichment to vindicate its rights and recover what Mansfield stole.

## PARTIES

2. Vox Media is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Washington, D.C. Vox Media is a fast-

1

growing digital media company that creates and distributes content online through eight influential brands, covering sports, culture, technology, and politics, among other subjects.

3. Upon information and belief, Mansfield is a natural person residing in Atlanta, Georgia.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1332. The parties in this matter are completely diverse in citizenship and the amount in controversy exceeds $75,000.

5. This Court has personal jurisdiction over Mansfield pursuant to D.C. Code § 13-432(a) because he caused tortious injury in the District by acts and omissions in the District.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## STATEMENT OF FACTS

7. Vox Media was founded as an innovative producer of digital content, focusing on telling high-quality stories across various platforms.

8. In August 2012, Vox Media hired Mansfield as Procurement Manager for Vox Media. Mansfield worked in that position for three years before he departed.

9. Generally, Mansfield's position involved coordinating procurement methods; managing data from company cards, expense reports, and corporate accounts for budget reporting; and monitoring spend levels. Mansfield worked within the finance and accounting department.

10. His responsibilities included managing the corporate credit card account at Silicon Valley Bank (SVB) and various frequent-flier and travel rewards accounts on behalf of Vox

Media.  Vox Media had accounts with American Airlines, Southwest Airlines, and Amtrak, among others.  Mansfield was responsible for setting up the frequent-flier and travel rewards accounts and processing reimbursement requests.  Mansfield also helped authorized individuals at Vox Media obtain corporate credit cards to use for company business.  Mansfield's job was based in Washington, D.C. and did not require travel.

11. Upon Mansfield's employment, Vox Media provided Mansfield an Employee Handbook.  He acknowledged it and agreed to abide by its terms, including its list of strictly prohibited activities.  Those activities expressly included "damage, destruction, or theft of property."  In accepting his position, Mansfield also agreed to "serve the Company faithfully and use [his] best efforts to promote its interests…."

12. Vox Media was a start-up when Mansfield joined, and it had no policy in place for management of corporate travel.

13. When Mansfield joined, Vox Media had just applied for a corporate credit card with SVB.  Vox Media's Controller submitted an application in May 2012.  The application clearly indicated that the rewards program associated with corporate cards and points from that program would be for the benefit of the business.  SVB's rewards program allowed customers to convert point balances to cash or merchandise.  The account application offered Vox Media the choice of enrolling the company itself in the SVB rewards program or allowing employees to enroll in an individual-points program in connection with the account.  Vox Media chose to enroll the company itself rather than authorize rewards points to accrue to individual employees.  Accordingly, all points accrued from company cards under the rewards program would be for Vox Media's use.

14. Certain types of employees were provided with a company credit card or authorization to charge using the account. But individual employees were not authorized to use company points or accrue points to personal accounts based on the company's transactions.

15. Vox Media also entrusted Mansfield with the establishment and management of its frequent-flier and other travel rewards accounts. Mansfield opened accounts with American Airlines and Southwest Airlines on behalf of Vox Media. Vox Media had other rewards accounts, including with Delta Airlines and Amtrak.

16. The rewards programs all operated along the same lines: the more money Vox Media spent with each merchant, the more points accrued to Vox Media's account with each. Account holders could then use points in their accounts to purchase airline travel or merchandise, or simply convert them to cash-equivalent "bonus" cards with Mastercard or with other merchants, which could be used to purchase goods or services.

17. Mansfield gave access to the travel rewards accounts only to himself; no other Vox Media employee had access to them. Mansfield was also one of very few people who had access to the SVB credit card. When he discussed the SVB rewards program with another Vox Media employee, he described it as not very good.

18. During the time Mansfield worked at Vox Media, the company did not dedicate a specific use to the rewards points it accrued through the company card or the frequent-flier/travel accounts. Rather, Vox Media was deliberating on what purpose to put the points to—whether for large company events, holiday parties, or the like. In the meantime, the points were to be set aside until the company had determined a use for them. At no point did the company authorize individuals to redeem the rewards points or otherwise transfer them for personal use.

19.     Unbeknownst to Vox Media, however, Mansfield betrayed the company, secretly stealing from it throughout his employment, and even afterwards.  He repeatedly used his control over the corporate credit card and travel accounts to transfer cash to himself or to transfer rewards points from Vox Media's accounts to his personal accounts.  Many times, Mansfield simply converted the points to cash in the form of $500 MasterCard bonus cards or $100 gift cards with various merchants and instructed the merchants to send them first to 2241 Eisenhower Avenue, # 823, Alexandria, VA 22314, and later to 3527A S. Stafford Street, Arlington, VA 22206.  But these were not Vox Media's addresses.  They were Mansfield's personal addresses.  In some cases, he converted the value in the rewards accounts to luxury goods and had those sent to his home addresses, too.  And sometimes he simply bought himself airline tickets using Vox Media's frequent-flier points.

20.     Mansfield never disclosed to Vox Media that he bought luxury items with the company's rewards account or that he simply paid himself tens of thousands of dollars above the salary and benefits which Vox Media authorized and reported to the Internal Revenue Service.

21.     Mansfield left Vox Media in June 2015.  He moved several months later to a new job in Atlanta, Georgia.

22.     Mansfield's conduct was so shameless that he even continued this theft long after he left his position at Vox Media.  On February 7, 2016, more than half a year after he left Vox Media, Mansfield used Vox Media assets to purchase a TAG Heuer Men's Aquaracer Stainless Steel Watch with Blue Dial worth $1,713:



23.     Vox Media never authorized Mansfield to use the company's rewards account for his own benefit.  To the contrary, Vox Media entrusted him with a special duty of care to manage these corporate assets for the benefit of the company and to guard against their misuse.

24.     Mansfield deprived Vox Media of money, valuable assets, and control over its own property.

25.     Vox Media discovered Mansfield's theft only after he left.  After Mansfield left the company in June 2015, his roles and responsibilities associated with managing the Company's travel programs transitioned to a Senior Accountant.  In December 2015, a new Corporate Controller was hired.

26.     In April 2016, the Senior Accountant discovered that Mansfield was still listed as the contact for the SVB credit card account and the travel accounts.  Understanding the company never to have used the balances in these accounts, he presumed them to be dormant and asked SVB for a report of account activity.

6

27. To his surprise, SVB disclosed that the accounts had been quite active and provided the Senior Accountant with a report on that activity. The report revealed Mansfield's massive diversion to Mansfield of rewards credits in Vox Media's corporate account at SVB.

28. The records showed that Mansfield's redemption of rewards from the account with SVB was deliberate and consistent. Beginning March 2013, Mansfield began redeeming rewards from the account, and records show that he did it with regularity; the redemption history on the account shows activity for almost three years.

29. The Senior Accountant found a similar pattern when he investigated Vox Media's accounts with Delta Airlines and American Airlines. In each case, Mansfield had set himself as Vox Media's only contact with the travel provider and used that control over the accounts to cash in for his own personal benefit. After discovering the scheme, Vox Media had most of its vendors change the account access and cut off Mansfield's ability to continue it.

30. So far, Vox Media has confirmed that Mansfield stole over $210,000 worth of goods and credits through this scheme. But as Mansfield himself was the person in charge of these accounts, Vox Media cannot be certain that it has uncovered the entire scope of his fraud.

31. Vox Media has still not been able to determine how much Mansfield misappropriated from the Southwest Airlines and Amtrak accounts. As both Southwest Airlines and Amtrak are popular travel companies with Vox Media employees, the rewards points for those accounts accrue quickly. It is conceivable that the value Mansfield diverted from those accounts could significantly add to the total damages in this case.

32. Vox Media seeks relief on the following bases:

## COUNT I
## Fraud

33. The allegations in Paragraphs 1-32 are re-alleged and incorporated herein by reference.

34. Vox Media entrusted its corporate card account and various frequent-flier and travel accounts to Mansfield during his time as an employee. Mansfield alone had access to said accounts. It was his responsibility to manage the accounts on behalf of the company.

35. Consistently throughout the course of his employment at Vox Media and for more than half a year after his departure, Mansfield knowingly and intentionally took rewards from Vox Media's corporate, frequent-flier, and travel accounts, and transferred rewards points to his personal account and/or to "bonus" cards for his own personal use.

36. Upon commencing employment, Vox Media provided Mansfield with an Employee Handbook that made clear certain common sense understandings: Mansfield could not engage in theft of company property or misuse of company funds. Mansfield acknowledged, in writing, that he understood and accepted this.

37. Mansfield intended to deceive Vox Media and obscure his theft of rewards points. To that end, Mansfield told other employees that the SVB rewards program was not very good, to downplay how many rewards points Vox Media had earned. Moreover, Mansfield retained sole access to these accounts and did not share access information with any other employees, ensuring that only he could see the value of rewards accrued and enabling his surreptitious practice of cashing in rewards for his personal benefit. Mansfield further deceived Vox Media by having the fruits of his scheme, such as the many $500 Mastercards, other "gift" cards, the $1750 watch, and other merchandise sent to his home address rather than the Vox Media address listed on the relevant accounts.

38. Vox Media relied on Mansfield's representations that he would faithfully manage the accounts and not engage in theft of company property. Based on those representations, Vox Media assumed that the rewards points accrued from the company credit card and various travel accounts were minimal but available for Vox Media's use in accordance with the terms of the merchants' rewards programs.

39. At all relevant times, Vox Media was unaware of Mansfield's deception. It was only months after Mansfield departed that Vox Media realized that Mansfield had flagrantly stolen rewards points from the corporate account and moreover, had *continued to do so* even after departing from the company.

40. As a proximate result of Mansfield's fraud, Vox Media has suffered a loss of at least $200,000, possibly more, in an amount to be proved at trial.

## COUNT II
### Fraudulent Concealment

41. The allegations in Paragraphs 1-40 are re-alleged and incorporated herein by reference.

42. Vox Media entrusted its corporate card account and various frequent-flier and travel accounts to Mansfield during his time as an employee. Mansfield alone had access to said accounts. It was his responsibility to manage the account on behalf of the company.

43. Consistently throughout the course of his employment at Vox Media and for more than half a year after his departure, Mansfield knowingly and intentionally took rewards from Vox Media's corporate, frequent-flier, and travel accounts, and transferred rewards points to his personal account and/or to "bonus" cards for his own personal use.

44. Despite his duty to act as an honest employee, and to refrain from theft of company property or misuse of company funds, Mansfield concealed these facts from Vox

Media with the intent to defraud Vox Media of its assets in the corporate account. Mansfield hid evidence of his deception by retaining sole access to the corporate, frequent-flier, and travel accounts, by describing the SVB rewards program as not very good, and by instructing the rewards program companies to send the stolen assets to his home address rather than to Vox Media.

45. At all relevant times, Vox Media was unaware of Mansfield's deception. It was only months after Mansfield departed that Vox Media realized that Mansfield had flagrantly stolen rewards points from the corporate account and moreover, had *continued to do so* even after departing from the company.

46. As a proximate result of Mansfield's concealment, Vox Media has suffered a loss of at least $200,000, possibly more, in an amount to be proved at trial.

## COUNT III
### Conversion

47. The allegations in Paragraphs 1-46 are re-alleged and incorporated herein by reference.

48. Vox Media had clear ownership over the assets in the frequent-flier and corporate accounts.

49. Furthermore, Vox Media never authorized any employees to transfer points or miles from those accounts into employees' personal accounts.

50. Mansfield wrongfully transferred frequent-flier miles and other corporate assets from those accounts into his own personal account and converted those points into cash, cash equivalents, or luxury goods.

51. As a proximate result of Mansfield's acts of conversion, Vox Media has suffered losses of at least $200,000, possibly more, in an amount to be proved at trial.

## COUNT IV
## Unjust Enrichment

52. The allegations in Paragraphs 1-51 are re-alleged and incorporated herein by reference.

53. Mansfield enriched himself unjustly during and after his employment at Vox Media, using Vox Media's reward points.

54. He also had the benefit of access to the corporate and frequent-flier accounts. He wrongfully used his access privileges to enrich himself. Moreover, after his employment had concluded, he continued to access Vox Media's accounts to transfer more points to his own account.

55. As a proximate result of Mansfield's conduct, Vox Media has suffered losses of at least $200,000, possibly more, in an amount to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Vox Media, respectfully requests that this Court:

(a) Award compensatory damages in an amount to be proven at trial, and which may exceed $200,000, depending on the full scope of what Mansfield misappropriated from Vox Media;

(b) Award punitive damages for Mansfield's intentional, willful, and wanton conduct, which was in reckless disregard of Vox Media's rights;

(c) Grant such other relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff Vox Media hereby demands trial by jury.

April 14, 2017                                    Respectfully submitted,

                                                           */s/ Patrick O'Donnell*

                                                           _____
Patrick O'Donnell (DC Bar # 459360)
Harris, Wiltshire & Grannis LLP
1919 M Street, NW, 8th Floor
Washington, DC 20036
podonnell@hwglaw.com
Counsel for Vox Media, Inc.