UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
VOX MEDIA, INC.,                   )
                                   )
         Plaintiff,                )
                                   )
     v.                            ) Civil Action No. 17-666 (EGS)
                                   )
GRAIG MANSFIELD,                   )
                                   )
         Defendant.                )
_____)

**MEMORANDUM OPINION AND ORDER**

Plaintiff Vox Media, Inc. ("Vox") brings suit against its former employee Defendant Graig Mansfield for allegedly defrauding the company by taking over $200,000 of its assets for his own use. Vox's complaint includes four counts against Mr. Mansfield for (1) fraud; (2) fraudulent concealment; (3) conversion; and (4) unjust enrichment. Pending before the Court is Mr. Mansfield's motion to dismiss Vox's complaint. *See* Def.'s Mot., ECF No. 14. Upon consideration of the motion, the response and reply thereto, and the relevant law, Mr. Mansfield's motion to dismiss is **DENIED**.

I.  **Background**

Vox is a digital media company organized under Delaware law with its principal place of business in the District of Columbia. Compl., ECF No. 1 ¶ 2. Vox creates and distributes news content online "covering sports, culture, technology, and

politics, among other subjects." *Id.* In August 2012, Vox hired Mr. Mansfield to work as its "Procurement Manager" within the finance and accounting department. *Id.* ¶¶ 8, 9. Mr. Mansfield worked in that position for three years, until he left Vox in June 2015 and moved to Atlanta, Georgia, where he currently resides. *Id.* ¶¶ 3, 8, 21. As Procurement Manager, Mr. Mansfield "coordinat[ed] procurement methods; manag[ed] data from company cards, expense reports, and corporate accounts for budget reporting; and monitor[ed] spend[ing] levels." *Id.* ¶ 9. Mr. Mansfield also managed Vox's corporate credit card account and its various frequent-flier and travel reward accounts. *Id.* ¶¶ 10, 15. Upon joining Vox, Mr. Mansfield "acknowledged and agreed to abide by" Vox's "Employee Handbook." *Id.* ¶ 11. In so doing, he "agreed to 'serve the Company faithfully and use [his] best efforts to promote its interests.'" *Id.* He also agreed he would not damage, destroy, or steal company property. *Id.*

Vox applied for its corporate credit card in May 2012. *Id.* ¶ 13. The credit card had a "rewards program" under which a customer earned "points" based on the customer's spending. *Id.* ¶¶ 13, 16. The customer could use the points to purchase travel or merchandise or simply convert the points to cash or cash-equivalent bonus cards. *Id.* ¶ 16. A corporate customer could choose to enroll the company itself in the rewards program or allow individual employees to earn the points. *Id.* ¶ 13. Vox

chose to enroll the company itself; therefore, "all points accrued from company [credit] cards under the rewards program would be for Vox Media's use." *Id.* Likewise, Vox enrolled itself in travel reward accounts that operated similarly. *Id.* ¶¶ 15, 16. The company did not authorize individuals to redeem or transfer the company's travel or credit card points for personal use. *Id.* ¶¶ 13, 14. During Mr. Mansfield's tenure, Vox had not dedicated a specific use for the rewards points; it was "deliberating" and put the points "aside until the company had determined a use for them." *Id.* ¶ 18.

Vox alleges that Mr. Mansfield "betrayed the company" by "secretly stealing from it throughout his employment, and even afterwards." *Id.* ¶ 19. According to Vox, Mr. Mansfield "repeatedly use[d] his control over the corporate credit card and travel accounts to transfer cash . . . or reward points . . . to his personal accounts." *Id.* For example, Mr. Mansfield allegedly converted rewards points to cash-equivalent gift cards and instructed the merchants to send the gift cards to his personal address. *Id.* He also allegedly used the rewards points to purchase luxury goods—including a watch worth over $1,700— which he also sent to his personal address. *Id.* ¶¶ 19, 22. Mr. Mansfield also allegedly bought himself airline tickets using Vox's frequent-flier points. *Id.* ¶ 19.

According to Vox, Mr. Mansfield "continued this theft long after he left his position" in June 2015. *Id.* ¶ 22. He allegedly continued using Vox's points until at least February 2016. *Id.* From March 2013 through at least February 2016, Mr. Mansfield allegedly stole over $210,000 worth of Vox's assets. *Id.* ¶¶ 28, 30. Vox discovered Mr. Mansfield's alleged scheme in April 2016 and filed its complaint on April 14, 2017. *See id.* ¶ 26-29.

## II. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations and citations omitted).

Despite this liberal pleading standard, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). A claim is facially plausible when the facts pled in the complaint allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The standard does not amount to

4

a "probability requirement," but it does require more than a "sheer possibility that a defendant has acted unlawfully." *Id.*

"[W]hen ruling on a defendant's motion to dismiss [pursuant to Rule 12(b)(6)], a judge must accept as true all of the factual allegations contained in the complaint." *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (internal quotations and citations omitted). In addition, the court must give the plaintiff the "benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Even so, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to state a claim. *Iqbal*, 556 U.S. at 678.

### III. Analysis

Mr. Mansfield moves to dismiss Vox's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Def.'s Mot., ECF No. 14. He makes two arguments: (1) Vox's complaint is time-barred; and (2) Vox has not sufficiently pled fraudulent concealment. *See id.* The Court considers each argument in turn.

**A. It is Premature to Dismiss Vox's Complaint as Untimely**

Mr. Mansfield argues that the Court should dismiss Vox's complaint as untimely. *See* Def.'s Mot., ECF No. 14 at 7.[1] He contends that, under District of Columbia law, the statute of limitations for fraud, conversion, and unjust enrichment is three years. *See id.* According to Mr. Mansfield, Vox's injury "accrued in March 2013," the date that he allegedly "began to redeem [credit card] and travel rewards for his personal benefit and without the company's permission." *Id.* Thus, Vox should have filed its complaint by March 2016. Because Vox did not file its complaint until April 14, 2017, Mr. Mansfield argues that its complaint must be dismissed. *See id.* Vox responds that its complaint is not conclusively time-barred because the statute of limitations is tolled by the doctrine of fraudulent concealment. *See* Pl.'s Opp'n, ECF No. 16 at 6-8.

Federal Rule of Civil Procedure 12(b)(6) "is the vehicle for asserting the affirmative defense of statutory time limitation." *Peart v. Latham & Watkins LLP*, 985 F. Supp. 2d 72, 80 (D.D.C. 2013). "[B]ecause statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred."

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

*Bregman v. Perles*, 747 F.3d 873, 875-76 (D.C. Cir. 2014) (quoting *de Csepel v. Republic of Hungary*, 714 F.3d 591, 603 (D.C. Cir. 2013)). A court should therefore "'hesitate to dismiss a complaint on statute of limitations grounds'" unless the defendant has met his "heavy burden" to show that the complaint is conclusively time-barred. *Feld Ent., Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 308 (D.D.C. 2012) (quoting *DePippo v. Chertoff,* 453 F. Supp. 2d 30, 33 (D.D.C. 2006)).

Vox does not dispute that its claims are governed by the District of Columbia's three-year statute of limitations pursuant to D.C. Code § 12-301(8). *See generally* Pl.'s Opp'n, ECF No. 16. While a claim generally accrues under District of Columbia law "'when the plaintiff has knowledge of (or by the exercise of reasonable diligence should have knowledge of) (1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing,'" fraudulent concealment "tolls the running of the statute of limitations." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)(quoting *Knight v. Furlow,* 553 A.2d 1232, 1234 (D.C. 1989)). To plead fraudulent concealment, a plaintiff must allege "(1) that defendants engaged in a course of conduct designed to conceal evidence of their alleged wrong-doing and that (2) the plaintiffs were not on actual or constructive notice of that evidence, despite (3)

7

their exercise of diligence." *Id.* (quotations and citations omitted). While fraudulent concealment "generally . . . requires that the defendant made an affirmative misrepresentation tending to prevent discovery of the wrong doing," a "failure to disclose by one who has a duty to do so—such as someone standing in a fiduciary or confidential relationship—can also establish fraudulent concealment." *Id.*

Whether Mr. Mansfield fraudulently concealed his alleged fraud and conversion is a "contested question[] of fact," precluding dismissal at the pleadings stage. *Bregman*, 747 F.3d at 875-76. Indeed, the Court finds that Vox has adequately pled that: (1) Mr. Mansfield affirmatively concealed his actions to prevent discovery; and/or (2) that he had a fiduciary duty to disclose his alleged theft and failed to do so.

Specifically, Vox alleges that Mr. Mansfield gave only himself access to Vox's rewards accounts, plausibly in an attempt to avoid detection. Compl., ECF No. 1 ¶¶ 17, 29 ("Mansfield had set himself up as Vox Media's only contact with the travel provider and used that control over the accounts to cash in for his own personal benefit."). Because Mr. Mansfield was the only employee with access to the accounts, *see id.*, it is also plausible that Vox did not have notice of his behavior, despite its asserted diligence in ensuring that its employees did not steal any company property, *see id.* ¶ 11 (alleging

company policies against theft). Vox also alleges that Mr. Mansfield downplayed the benefits that the company earned via the rewards programs, describing the benefits as "not very good." *Id.* ¶ 17. Construed in the light most favorable to Vox, the Court must infer that Mr. Mansfield minimized Vox's benefits in an attempt to conceal his alleged theft. Additionally, Vox alleges that Mr. Mansfield sent the stolen gift cards and luxury items to his home address, rather than his work address. *Id.* ¶ 19. Again, the Court may infer that he did so in order to conceal his activities from his employer.

Mr. Mansfield contends that these alleged concealments cannot meet the standard for fraudulent concealment as a matter of law. *See* Def.'s Reply, ECF No. 17 at 2-3. In so arguing, he compares the alleged misrepresentations to those at issue in *Riddell v. Riddell Washington Corp.*, and concludes that his alleged deception cannot meet the *Riddell* "standard." *See id.* (discussing 866 F.2d 1480, 1491 (D.C. Cir. 1989)). In *Riddell*, the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") concluded that a jury could find that the defendants had affirmatively concealed their wrongdoing when they lied to the plaintiff about an appraisal. 866 F.2d at 1492. In so concluding, the D.C. Circuit held that a defendant's affirmative deception may be "as simple as a single lie." *Id.* (quotations omitted). It did not create a "standard for concealment," as Mr.

Mansfield seems to suggest. *See* Def.'s Reply, ECF No. 17 at 3. Mr. Mansfield's reliance on *Riddell* is also misplaced because the D.C. Circuit reached its conclusion at the summary judgment stage with the benefit of discovery. *See id.*

What's more, Vox has also alleged sufficient facts to suggest that Mr. Mansfield was in a fiduciary relationship with the company. As such, Mr. Mansfield may have fraudulently concealed his theft by merely failing to disclose it to Vox. *See Firestone*, 76 F.3d at 1209. For example, Vox alleges that Mr. Mansfield was "entrusted with the management of corporate assets," Compl., ECF No. 1 ¶ 1, and had "a special duty of care," *id.* ¶ 23, yet "never disclosed" his actions to the company, *id.* ¶ 20. Vox also alleges that Mr. Mansfield had a duty to "serve the company faithfully" and not steal "any company property" pursuant to its policies. *Id.* ¶ 11.

Mr. Mansfield contends that he was not a fiduciary because he had a "relatively low-level position" and "was not an officer or director, or even the head of a department." Def.'s Mot., ECF No. 14 at 8. Whether Mr. Mansfield was indeed a fiduciary is "contested question[] of fact" that the Court may not resolve at this stage of the proceedings. *Feld Ent., Inc.*, 873 F. Supp. 2d at 308. "District of Columbia law has deliberately left the definition of 'fiduciary relationship' flexible." *Kemp v. Eiland*, 139 F. Supp. 3d 329, 343 (D.D.C. 2015)(citations

omitted)(analyzing a breach of fiduciary duty claim). As such, determining whether a fiduciary relationship exists is "a *fact-intensive* question, and the fact-finder must consider 'the nature of the relationship, the promises made, the type of services or advice given and the legitimate expectations of the parties.'" *Millennium Square Residential Ass'n v. 2200 M Street LLC*, 952 F. Supp. 2d 234, 248-49 (D.D.C. 2013)(quoting *Firestone*, 76 F.3d at 1211) (emphasis added). Given Mr. Mansfield's alleged control over Vox's credit card and travel accounts and its alleged expectation that he would serve the company faithfully, it is plausible that Mr. Mansfield had a fiduciary relationship with Vox. *See, e.g.*, *id.* ¶¶ 11, 29.

Therefore, the Court cannot conclude, at this stage of the proceedings, that Vox's complaint is conclusively time-barred.

### B. Vox Sufficiently Pled Fraudulent Concealment

Relatedly, Mr. Mansfield argues that Vox failed to plead "any element[]" of fraudulent concealment. Def.'s Mot., ECF No. 14 at 8. As discussed, the Court finds that Vox pled facts sufficient to infer that Mr. Mansfield concealed his alleged theft and that Vox had no notice of the concealment, despite its due diligence. *See Firestone*, 76 F.3d at 1209 (discussing the elements of fraudulent concealment).

Still, Mr. Mansfield argues that the Vox has not pled fraudulent concealment because it has not "establish[ed] that

11

[Vox] used due diligence in trying to uncover the facts." Def.'s Mot., ECF No. 14 at 8. Mr. Mansfield contends that Vox exercised "no oversight" and failed to allege any steps its employees took to supervise Mr. Mansfield, request access to the rewards accounts, or review the accounts. *Id.* at 8-9. Vox responds by arguing that the Court may not infer a lack of diligence on a motion to dismiss. Pl.'s Opp'n, ECF No. 16 at 11.

Once a plaintiff pleads "fraudulent concealment," a defendant may "assert a defense based on the plaintiff's lack of due diligence." *Firestone*, 76 F.3d at 1209 (quotations omitted). To determine whether a plaintiff exercised due diligence in uncovering a cause of action, a court must make "a fact-specific judgment in each case as to what the court expects a reasonable plaintiff to do in uncovering the elements of his claim." *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 505 F. Supp. 2d 1, 13 (D.D.C. 2007)(quotations omitted). A court must measure "the plaintiff's efforts to uncover his cause of action against what a reasonable person would have done in his situation given the same information." *Id.* (quoting *Richards v. Mileski*, 622 F.2d 65, 71 (D.C. Cir. 1981)).

At this stage, the Court cannot determine whether Vox's efforts were reasonable, as assessing Vox's diligence requires the Court to make a "fact-specific judgment." *Id.* As previously discussed, Vox alleges that it could not discover Mr.

12

Mansfield's alleged theft because he was the only employee with access to the rewards accounts. *See, e.g.*, Compl., ECF No. 1 ¶ 29. Whether it was reasonable for Mr. Mansfield to have such unlimited access, in light of his promise to faithfully serve the company and not steal its property, *see id.* ¶ 11, is a contested issue of fact that the Court may not resolve without the benefit of discovery.

**IV. Conclusion and Order**

Accordingly, for the reasons set forth in this Memorandum Opinion, Mr. Mansfield's motion to dismiss Vox's complaint is **DENIED**. Mr. Mansfield is directed to file his answer to Vox's complaint by no later than September 10, 2018.

    **SO ORDERED.**

**Signed:**    **Emmet G. Sullivan**
               **United States District Judge**
               **August 20, 2018**